[No. 17930.  Department One.  August 16, 1923.]

HELEN M. HAVERCAMP, *Respondent,* v. NORMAN A. HAVERCAMP, *Defendant,* AUGUST HAVERCAMP *et al., Garnishee Appellants.*[1]

GARNISHMENT (49)—EVIDENCE OF INDEBTEDNESS—SUFFICIENCY.  A verdict in garnishment proceedings to the effect that a father was indebted to his son for the amount of his son's wages, assigned to him, is not supported by the evidence where there was nothing to rebut the father's testimony of loans and advances to the son, fully corroborated by the written evidence of such loans.

Appeal from a judgment of the superior court for King county, John S. Jurey, judge *pro tempore,* entered December 20, 1922, upon the verdict of a jury rendered in favor of the plaintiff in garnishment proceedings, after a trial on the merits.  Reversed.

*Peterson & MacBride,* for appellants.

*Paul Carrigan,* for respondent.

MITCHELL, J.—On March 31, 1921, Helen M. Havercamp obtained a decree of divorce against her husband, Norman A. Havercamp, in King county, Washington. It provided for costs and future support money.  On April 5, 1922, $484.50 had accrued in her favor, under the decree and was unpaid.  On that date she commenced this action in garnishment against August Havercamp and Loleta Havercamp, husband and wife,

[1]Reported in 217 Pac. 710.

parents of Norman. The garnishee defendants answered "no funds or property." The answer was controverted. The issue was tried to a court and jury. The verdict was for the plaintiff. Garnishee defendant's motions for judgment notwithstanding the verdict and for a new trial were denied. From the judgment on the verdict in favor of the plaintiff, the garnishee defendants have appealed.

The facts are pretty clear. Shortly prior to the divorce, the father from time to time loaned to his son $215, furnished by checks; and $60 in cash as evidenced by the son's promissory note. After the divorce he loaned him $100 and $75, furnished by checks. In May, 1921, the son obtained employment under the bureau of education of the Federal government, for services in Alaska. Upon his leaving for Alaska, the father still further loaned him the sums of $150 and $450, furnished by checks, for which he gave his father a promissory note of $600. About that time, May 19, 1921, the son made and delivered to his father a written assignment of his wages to become due from the government. His wages it appears were $125 a month. While the son was in Alaska, the father procured, on January 26, 1922, five post office money orders in the sum of $100 each, and sent them to his son. Some few months thereafter, this garnishment proceeding was instituted. The checks to the son, endorsed by him, were returned to the father in the ordinary course of business through his bank on which they were drawn. They were introduced in evidence. The two promissory notes, $60 and $600, were introduced in evidence. To procure the $500 in post office money orders, the father drew two checks on his bank by which he got cash with which he purchased the post office money orders that were forwarded to his son by registered mail. These checks, post office money order receipts, and the registry return

receipt signed by the son, were all introduced in evidence. The total amount of the loans was $1,550 and represented a number of transactions extending over a period of several years.

At the trial, the garnishee defendants admitted the receipt of $1,062.50 from the Federal government on account of the son's wages under the assignment from him. The father was the sole witness on behalf of the appellants. He testified to and identified the several written instruments introduced in evidence on behalf of the appellants. There was no dispute as to any of the checks, notes or orders, nor the signature of the son wherever it appeared on any of them, other than as to one check for $25 which the respondent testified was given to her former husband by his father as a Christmas present and a check for $70 which she claimed was for labor performed by him for his father. The promissory notes were overdue at the time this action was commenced.

It is the contention of the respondent—manifestly adopted by the trial court—that, as the father, who was the sole witness for the appellants, was an interested witness, it was a question for the jury to determine whether or not his testimony was to be believed to the extent of overcoming the *prima facie* case of the respondent made by the father's admission that he had received $1,062.50 of his son's wages from the Federal government. Many cases are cited by respondent in reliance upon that rule, which we admit would be most worthy of consideration if, in this case, the father had testified simply to the transactions with his son without producing and putting in evidence the corroborating evidence of the many written instruments signed by the son whose signatures were in no instance disputed or denied by his former wife, the plaintiff, who, while testifying in rebuttal, addressed her dispute only

to the question of the purposes of two of the small checks. This corroborating evidence on behalf of the appellants, in no way attempted to be met by the respondent other than as to the two small checks, indicated dealings according to the ordinary course of business, and was entirely substantial and convincing. It opposes the verdict to the extent that it must be held, as a matter of law, that there is neither evidence nor reasonable inference from evidence to sustain the verdict. *Babbitt v. Seattle School Dist. No. 1*, 100 Wash. 392, 170 Pac. 1020. There is no proof of any bad faith on the part of the parents in the taking of the assignment from the son or in making loans to him. Indeed, the father testified that he was not aware his son had been divorced until after all of the transactions between him and his son had taken place.

The motion for judgment notwithstanding the verdict should have been granted. The judgment is reversed, with directions to the trial court to dismiss the action.

MAIN, C. J., HOLCOMB, MACKINTOSH, and BRIDGES, JJ., concur.